UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

|                                   |   |                          |
|-----------------------------------|---|--------------------------|
| ASSOCIATED ELECTRIC GAS           | : |                          |
| INSURANCE SERVICES, ET AL.        | : |                          |
| v.                                | : | CIV. NO. 3:11CV715 (JCH) |
| BABCOCK & WILCOX POWER            | : |                          |
| GENERATION GROUP, INC.            | : |                          |

RULING ON DEFENDANT'S MOTION TO STRIKE
[DOC # 113]

Defendant Babcock & Wilcox Power Generation Group, Inc. moves to strike [Doc. # 113] the supplemental expert report of plaintiffs'[1] experts, Jamil Khan, Ph.D., P.E. and Thomast D. Traubert, P.E. For the reasons that follow, defendant's motion to strike plaintiffs' revised expert reports is DENIED IN PART AND GRANTED IN PART.

1. **Background**

In this action, plaintiffs assert a products liability claim against defendant pursuant to the Connecticut Products Liability Act. Plaintiffs allege their insured, Northeast Utilities, purchased Secondary Superheater ("SSH") inlet pendent tubes from the defendant to be used in a Power Generation Turbine ("Turbine"), part of Unit 2 of the Northeast Utilities Merrimack Station in Bow, New Hampshire. The SSH pendent tubes were part of the system of pipes which conveyed high pressure steam from the boiler to the Turbine. [Doc. # 18, Amended

---

[1] Plaintiffs in this action are Associated Electric & Gas Insurance Services, Zurich American Insurance Company, Energy Insurance Mutual Limited, as subrogees of Northeast Utilities System.

1

Complaint, paragraph 12]. Specifically, plaintiffs allege that an abrasive metal cleaning material ("foreign material") was left in the SSH pendent tubes sold by defendant and that on May 22, 2008, the foreign material circulated through the piping system and damaged components in Unit 2. [Doc. # 18, Amended Complaint, paragraph 16].

To support this theory of liability, plaintiffs disclosed several experts, including Thomas D. Traubert, P.E. and Jamil A. Khan, Ph.D., P.E. on October 8, 2012, in accordance with the Scheduling Order. Dr. Khan's report is dated October 6, 2012 and Mr. Traubert's report is dated October 5, 2012. Dr. Khan was retained "to construct a computation fluid dynamics ("CFD") model to determine whether the shot/grit passing through the throttle vale [sic] assembly would cause the damage that is present in the valve stem." [doc. # 114-8, Aff. Dr. Khan, ¶ 4]. As such, Dr. Khan's October 6, 2013 report is a Computational Fluid Dynamics study of velocity profile and particle trajectories of grit material in the throttle valve. [doc. # 114-10]. Dr. Khan was separately engaged by Mr. Traubert to calculate the minimum steam transport velocities required to carry the foreign material horizontally and vertically, which Mr. Traubert would rely on for his report.[2]

---

[2] "Separate and apart from the CFD model, which is the basis of my expected testimony, ED&T's Thomas Traubert asked me to perform certain calculations to determine the minimum steam transport velocities required to carry the

In the October 5, 2012 report, Mr. Traubert relied on a 1.0 feet per second velocity as the minimum fluid velocity that would be necessary to transport the foreign material through steam vertically from the SSH through the piping, to the valve and into the Turbine. On the second day of his deposition, February 1, 2013, Mr. Traubert was asked about the origin of the 1.0 feet per second velocity. He testified that this figure had been calculated by Dr. Khan. On January 4, 2013, Dr. Khan had produced to defendant a one page chart of vertical and horizontal velocities not referenced in his report, but identified in Traubert's October 5th report.[3] On March 21, 2013, Dr. Khan was deposed on his expert report and was also questioned about the January 4, 2013 chart. At his deposition, he agreed to produce the calculations and formulas used to arrive at the figures.

On April 1, 2013, Dr. Khan produced a separate report with new calculations for the minimum fluid velocity for vertical transport of the foreign material, as was requested by defendant at this deposition. [doc. # 113-10, Exhibit H, Dr. Khan, April 1, 2013 calculation report]. Dr. Khan admits that he made a mistake, and that the minimum vertical transport velocity of the

---

shot/grit horizontally and vertically through B&W's Pendent tubes". [doc. # 114-8, Aff. Dr. Khan, ¶ 5].
[3] In his report, Traubert identifies the documents he reviewed as part of his investigation, which includes "Tables prepared by Dr. Jamil Khan, Ph.D., that identify the minimum transport velocities for foreign particles in steam and water." [Doc. # 113-6, Ex. D, Traubert Oct. 5, 2012 Report, at 15].

foreign material was between 6.398 and 12.050 feet per second and not 1.0 feet per second as he previously submitted to Mr. Traubert. Dr. Khan's April 1, 2013 report is not a supplement to original expert report, but rather a report Mr. Traubert reviewed and considered to arrive at his conclusions. This new data was given to Mr. Traubert, who disclosed a supplemental report on April 22, 2013, and then again with corrections on April 24, 2013.

### 2. Discussion

Defendant argues that the supplemental expert reports are not a supplement because they introduce new opinions and a new theory of liability. Defendant further argues these new reports should be stricken because they are untimely and improper attempts to introduce new opinions six months after the expert disclosure deadline and because the reports rely on documents and data defendant requested and never received. Finally, defendant argues plaintiffs should be precluded from introducing evidence requested but withheld during discovery.

Alternatively, defendant argues that if the Court allows the supplemental reports, the Court should award to defendant the costs incurred to address and examine the new reports, to conduct additional fact and expert discovery as a result of the new reports, and to prepare the instant motion to strike.

Defendant further seeks an extension of the expert discovery deadlines.

Plaintiff objects to the motion to strike and argues that Rule 26(e) requires the disclosure of the supplemental report. Plaintiff argues that even if the Court disagrees that the Mr. Traubert's report is a supplement, it should not be stricken because its disclosure is substantially justified and harmless. [doc. # 114].

### i. Standard

Rule 26(a)(2)(B)(I) of the Federal Rules of Civil Procedure provides that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[…]". "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." <u>Innis Arden Golf Club v. Pitney Bowes, Inc.</u>, 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009) (quoting <u>Sandata Techs., Inc. v. Infocrossing, Inc.</u>, Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (citation omitted)).

However, an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing…" Innis Arden Golf Club v. Pitney Bowes, Inc., No. 3:06CV1352 (JBA), 2009 WL 5873112, at *2 (D. Conn. Feb. 23, 2009) (quoting Fed. R. Civ. P. 26(e)(1)(A), (2)). "If a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information… to supply evidence… at trial, unless the failure was substantially justified or is harmless…" Id. (quoting Fed. R. Civ. P. 37(c)(1)). "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." Id. (quoting Lore v. City of Syracuse, No. 5:00-CV-1833, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005)).

"Plaintiff's duty to supplement its initial expert report does not arise when plaintiff seeks to bolster its earlier submission, but rather, arises 'only if the expert subsequently learns of information that was previously unknown or unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete....'" Innis Arden, 2009 WL 5873112, at *3 (D. Conn. 2009) (quoting Sandata Techs., 2007 WL 4157163, at *4 (emphasis added); see Buxton v. Lil' Drug Store Prods., Inc., No. 2:02CV178KS-MTP, 2007 WL 2254492, at *5 (S.D. Miss. Aug. 1, 2007) (citations omitted) ("Courts have ... made it clear that

6

supplemental expert reports cannot be used to 'fix' problems in initial reports.") (multiple citations omitted), aff'd, 294 Fed. Appx. 92 (5th Cir. 2008)).

    **ii. Timing and Contents of Revised Report**

Traubert's October 5, 2012 report is a 66-page report with an appendix of 59 figures. The report describes in detail the investigation that was undertaken to determine the "root cause" of the damage to the Turbine. It is divided into 12 sections, including Background Information, Work of Investigation, Unit 2 Steam and Feedwater System, Observations and Review of NUS and Siemens Photographs, Analysis of Foreign Material, Foreign Material Locations in Unit 2, Candidate Locations for Foreign Material Introduction, Analysis of Unit 2 Operating Data, Examination and Analysis of Throttle Valves, Discussion, Conclusions, and Other Considerations. The report lists the documents which were reviewed by Mr. Traubert as part of the root cause investigation of the incident. Notably, among the documents listed is, "Tables prepared by Dr. Jamil Khan Ph.D., that identify the minimum transport velocities for foreign particles in steam and water". [Page 15]. The report reaches four conclusions, to wit, (1) that the foreign material found in the Turbine was cast steel abrasive; (2) that the foreign material was introduced into Unit 2 when the SSH pendent tubes were delivered by the defendant without having cleared the

7

foreign material from the SSH pendent tubes; (3) that the foreign material introduced into Unit 2 by way of the SSH pendent tubes damaged the Turbine as well as other components in Unit 2; and (4) that the damage to the Turbine and other components in Unit 2 was due to the inadequate care taken by defendant to ensure that foreign material was not present in the SSH pendent tubes when they were fabricated and delivered.

By contrast, the April 22 supplemental report is 11 pages long and is limited to applying the new minimum fluid velocity speeds to the previously disclosed model. The supplemental report incorporates the revised minimum transport velocities and accounts for the steam flows to the 210 valve, which was not required in the original report.

Mr. Traubert characterizes the supplemental report as an "addendum" and explains that,

> On April 1, 2013, revised particle transport velocity data, along with supporting calculations, were issued by Dr. Kahn. In this regard, Calculations on Minimum Velocity for Particle Motion in a Moving Fluid, are attached as Appendix I to this report. The revised data affects the minimum calculated steam flows required to transport foreign material from the SSH and through the steam system, presented in Section H of the ED&T Report [the October 5, 2012 Report]. This Addendum Report addresses the transport of foreign material from the SSH using the current data provided in Appendix I for five operating conditions present during startup. Furthermore, a discussion of the operation of the 210 valve (used prior to turbine roll and up to 15 MW) is provided with regard to steam flowrates in the SSH relative to steam flows into the steam turbine.

Mr. Traubert noted in the supplemental report that the

8

revised minimum transport velocities in Appendix I are much greater than the minimum transport velocities used in the report issued by this investigation in October 2012. However, the velocities associated with the steam flow present in the SSH during steam turbine operation up to minimum governor are still sufficient to transport foreign material of up to the average size range, from the SSH. As such, damage to the pilot stem is expected.

[doc. # 114-6 at 11].

The Court finds that Traubert's supplemental report is indeed a supplement required under Rule 26(e). The original report was a complete report, but for the mistake in the calculation of the minimum transport velocities. The need to supplement arose when Dr. Khan realized that his calculations were incorrect, and he and Mr. Traubert quickly corrected that mistake. Here, there is no indication that the mistaken calculations were anything more than honest mistakes. See Medtronic Vascular, Inc., et al. v. Abbott Cardiovascular Systems, Inc., No. C-06-1066 PJH (EMC), 2008 WL 4601038 (N.D. Cal. Oct. 15, 2008) (denying motion to strike supplemental report correcting mathematical errors in the original report).

Moreover, the supplemental report does not advance new theories of liability or undermine the original report's conclusions. While Mr. Traubert made additional findings[4] in the supplemental report in reference to the 210 valve, these do not

---

[4] For example, he found that "the velocities in the SSH are insufficient to result in the transport of foreign material <u>when the throttle valves are closed and the steam flow goes through the 210 valve alone</u>. [doc. # 114-6, April 22, 2013, supplemental report, page 11, emphasis added].

9

alter the original report's main conclusion that the foreign material that made its way to the Turbine originated in the SSH pendent tubes. These additional findings, which take into consideration the additional factor of the 210 valve, simply narrow the time during which the foreign material could have made its way from the SSH to the Turbine, but they do not alter the original conclusion. As such, the Court agrees that the later report is a proper supplement under Rule 26(e).

The supplementation is timely under Rule 26(e)(2), which requires that additions or changes be disclosed "by the time the party's pretrial disclosures under Rule 26(a)(3) are due." Pretrial disclosure must be made "at least 30 days before trial". Fed. R. Civ. P. 26(a)(3)(B). This case is not scheduled for trial. Thus, the supplementation does not run afoul of Rule 26.

### iii. Additional Discovery

The Court rejects defendant's request to preclude plaintiffs from introducing evidence related to the 210 Valve and flow data which was not produced until it became relevant to Mr. Traubert's supplemental report. This information was requested by defendant; however, its production was never compelled. Moreover, once these documents came into play with the supplemental report, they were produced.

### iv. Prejudice

Finally, the Court is keenly aware that Dr. Khan's mistake, although unintentional, causes prejudice to defendant, especially where defendant has already deposed Dr. Khan and Mr. Traubert for several days. The Court finds that this prejudice can be mitigated by requiring plaintiffs to produce Dr. Khan and Mr. Traubert for continued depositions at a date, time, and location convenient to defendant's counsel.[5] Additionally, the Court will require plaintiff to bear the cost of the depositions, including defendant's reasonable attorney's fees incurred in preparing for and taking the additional depositions. The Court will not award fees for the expense of preparing the motion to strike. Because this additional discovery will delay the close of expert discovery and the filing of summary judgment, the parties shall confer and submit for the Court's consideration a proposed modified scheduling order.

The Court notes that nothing in this ruling should be construed as an opinion on the admissibility of the expert reports or testimony.

---

[5] The Court will not set a time limit to these depositions and will rely on the parties to confer and set reasonable time limits in light of the additional questioning defendant deems necessary. If the parties cannot agree they can contact chambers for a discovery conference.

### 3. Conclusion

For the reasons set forth herein, the defendant's motion to strike [doc. # 113] is DENIED IN PART AND GRANTED IN PART. This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport, this 16th day of August 2013.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE