```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT
                                     :
ASSOCIATED ELECTRIC GAS              :
INSURANCE SERVICES, ET AL.           :
v.                                   :    CIV. NO. 3:11CV715 (JCH)
                                     :
BABCOCK & WILCOX POWER               :
GENERATION GROUP, INC.               :
```

<u>RULING ON DEFENDANT'S MOTION TO STRIKE</u>
<u>[DOC # 127]</u>

Defendant Babcock & Wilcox Power Generation Group, Inc. moves to strike [Doc. # 127] portions of the rebuttal expert reports of plaintiffs'[1] experts, Thomas D. Traubert, P.E., and John T. Cammett, Ph.D. For the reasons that follow, defendant's motion to strike portions of the plaintiffs' rebuttal expert reports is DENIED.

**I.   Background**

In this action, plaintiffs assert a products liability claim pursuant to the Connecticut Products Liability Act. Plaintiffs allege their insured, Northeast Utilities, purchased Secondary Superheater ("SSH") inlet pendent tubes from the defendant to be used in a Power Generation Turbine ("Turbine"), part of Unit 2 of the Northeast Utilities Merrimack Station in Bow, New Hampshire. The SSH pendent tubes were part of the system of pipes which conveyed high pressure steam from the boiler to the Turbine. [Doc. # 18, Amended Complaint, ¶ 12].

---

[1] Plaintiffs in this action are Associated Electric & Gas Insurance Services, Zurich American Insurance Company, Energy Insurance Mutual Limited, as subrogees of Northeast Utilities System.

Specifically, plaintiffs allege that an abrasive metal cleaning material ("foreign material") was left in the SSH pendent tubes sold by defendant and that on May 22, 2008, the foreign material circulated through the piping system and damaged components in Unit 2. [Doc. # 18, Amended Complaint, ¶ 16].

To support this theory of liability, plaintiffs disclosed several experts, including Thomas D. Traubert, P.E., and Jamil A. Khan, Ph.D., P.E., on October 8, 2012, in accordance with the Scheduling Order. Dr. Khan's report is dated October 6, 2012 and Mr. Traubert's report is dated October 5, 2012. Dr. Khan was retained "to construct a computation fluid dynamics ("CFD") model to determine whether the shot/grit passing through the throttle vale [sic] assembly would cause the damage that is present in the valve stem." [Doc. # 114-8, Aff. Dr. Khan, ¶ 4]. As such, Dr. Khan's October 6, 2013 report is a Computational Fluid Dynamics study of velocity profile and particle trajectories of grit material in the throttle valve. [Doc. # 114-10]. Dr. Khan was separately engaged by Mr. Traubert to calculate the minimum steam transport velocities required to carry the foreign material horizontally and vertically, on which Mr. Traubert would rely for his report.[2]

---

[2] "Separate and apart from the CFD model, which is the basis of my expected testimony, ED&T's Thomas Traubert asked me to perform certain calculations to determine the minimum steam transport velocities required to carry the shot/grit horizontally and vertically through B&W's Pendent tubes". [Doc. # 114-8, Aff. Dr. Khan, ¶ 5].

In the October 5, 2012 report, Mr. Traubert relied on a 1.0 feet per second velocity as the minimum fluid velocity that would be necessary to transport the foreign material through steam vertically from the SSH through the piping, to the valve and into the Turbine. On the second day of his deposition, February 1, 2013, Mr. Traubert was asked about the origin of the 1.0 feet per second velocity. He testified that this figure had been calculated by Dr. Khan. On January 4, 2013, Dr. Khan had produced to defendant a one page chart of vertical and horizontal velocities not referenced in his report, but identified in Traubert's October 5th report.[3] On March 21, 2013, Dr. Khan was deposed on his expert report and was also questioned about the January 4, 2013 chart. At his deposition, he agreed to produce the calculations and formulas used to arrive at the figures.

On April 1, 2013, Dr. Khan produced a separate report with new calculations for the minimum fluid velocity for vertical transport of the foreign material, as defendant requested at this deposition. [Doc. # 113-10, Exhibit H, Dr. Khan, April 1, 2013 calculation report]. Dr. Khan admits that he made a mistake, and that the minimum vertical transport velocity of the foreign material was between 6.398 and 12.050 feet per second

---

[3] In his report, Traubert identifies the documents he reviewed as part of his investigation, which includes "Tables prepared by Dr. Jamil Khan, Ph.D., that identify the minimum transport velocities for foreign particles in steam and water." [Doc. # 113-6, Ex. D, Traubert Oct. 5, 2012 Report, at 15].

and not 1.0 feet per second as he previously submitted to Mr. Traubert.  This new data was given to Mr. Traubert, who disclosed a supplemental report on April 22, 2013, and then again with corrections on April 24, 2013.[4]  The April 22 supplemental report is limited to applying the new minimum fluid velocity speeds to the previously disclosed model. The supplemental report incorporates the revised minimum transport velocities and accounts for the steam flows to the 210 valve, which was not required in the original report.

Defendant also disclosed a number of experts including Dr. David N. French, Alexander Morson, and William H. Tuppeny, who produced their reports on June 24, 26, and 28, 2013, respectively. Although nothing in the schedule permitted it, plaintiffs served two rebuttal expert reports dated July 29, 2013. Mr. Traubert's report allegedly rebuts, in part, Mr. Morson's even distribution theory, while the report of a new expert, Dr. John Cammett, Ph.D., allegedly rebuts the opinions of Dr. French, Mr. Tuppeny, and Mr. Morson.

---

[4] On May 7, 2013, defendant moved to strike the April 1, 2013 expert report of Dr. Kahn, and the April 24, 2013 expert report of Mr. Traubert on the basis, inter alia, that the reports were not proper supplementation under Rule 26(e). [Doc. # 113].  The Court denied in part and granted in part defendant's motion, finding that these expert reports were proper. [Doc. # 125].  The Court also found, however, that Dr. Kahn's mistake caused prejudice to defendant, and ordered plaintiffs to require Dr. Kahn and Dr. Traubert to appear for continued depositions. Plaintiffs were further required to bear the costs of the depositions, including defendant's reasonable attorney's fees incurred in preparing for and taking the additional depositions.

**II.    Discussion**

Defendant seeks to strike pages 8-14 of Mr. Traubert's rebuttal report, and page 3, paragraph 3 of Dr. Cammett's report. Defendant argues that the rebuttal reports are improper because they offer new calculations and theories that could have been conducted or concluded at the time plaintiffs' initial expert reports were due. Defendant further argues that Dr. Cammett's report specifically does not rebut any opinion offered by defendant. Finally, defendant argues that it will suffer severe prejudice if the Court does not strike portions of the rebuttal reports.

Alternatively, defendant argues that if the Court allows the rebuttal reports, the Court should award to defendant the costs incurred to address and examine the rebuttal reports, conduct discovery regarding the theories contained in the rebuttal reports, obtain sur-rebuttal reports, and to prepare the instant motion. Defendant further seeks leave to serve its own rebuttal reports on any issues remaining after this Court's ruling.

Plaintiffs object to the motion to strike and argue that the rebuttal reports fall within the scope of Federal Rule of Civil Procedure 26(a)(2)(D)(ii) because the rebuttals offer no new theories and are solely offered to contradict or rebut defendant's experts. Plaintiffs also argue that the rebuttals

should be permitted as they present evidence that is highly probative to central issues in the case.

### A. Standard

Rule 26(a)(2)(B)(I) of the Federal Rules of Civil Procedure provides that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[…]".  "It should be assumed that at the time an expert issues his report, that report reflects his full knowledge and complete opinions on the issues for which his opinion has been sought." Innis Arden Golf Club v. Pitney Bowes, Inc., No. 3:06CV1352 (JBA), 2009 WL 5873112, at *3  (D. Conn. Feb. 23, 2009) (quoting Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (citation omitted)). Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure, however, permits rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[…]."  Generally, a rebuttal expert report should be used solely to explain or rebut opinions offered by the other party, and should not raise new arguments or theories. See Ebbert v. Nassau County, No. CV 05-5445, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008) (string citation omitted) ("A rebuttal expert report is not the proper place for presenting

6

new arguments, unless presenting those arguments is substantially justified and causes no prejudice."); Ironshore Ins. Ltd. v. Western Asset Mgmt. Co., No. 11 Civ. 5954(LTD)(JCF), 2013 WL 2051863, at *3 (S.D.N.Y. May 15, 2013) (quoting S.W. v. City of New York, No. 2009 CV 1777, 2011 WL 3038776, at *2 (E.D.N.Y. July 25, 2011)) (noting that the subject "rebuttal reports sought to 'explain, repel, counteract or disprove the evidence of the adverse party."). "If a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information… to supply evidence… at trial, unless the failure was substantially justified or is harmless…" Innis Arden Golf Club, 2009 WL 5873112, at *2 (quoting Fed. R. Civ. P. 37(c)(1)).

**B. Mr. Traubert's Rebuttal Report**

  *i.  Scope of Rebuttal*

Mr. Traubert's rebuttal report, dated July 29, 2013, purports to address the reports of defendant's experts, Alexander Morson and David J.H. Nicoll. [Doc. #130-4, Ex. C]. Mr. Traubert's rebuttal report is 22 pages long, excluding attached appendices.  The report is divided into six sections, four of which address the reports of Mr. Morson and Mr. Nicoll. Defendant takes issue with only section C, "MORSON REPORT – VELOCITY AT THROTTLE VALVE". (emphasis in original).  Defendant claims that this section contains new theory and underlying

7

calculations which bolster Mr. Traubert's initial opinions. Plaintiffs argue that section C of Mr. Traubert's report is intended solely to contradict Mr. Morson's even distribution theory.

After careful review of the disputed section of Mr. Traubert's rebuttal report, and applicable pages of Mr. Morson's report, the Court finds that section C is proper rebuttal under Federal Rule of Civil Procedure Rule 26(a)(2)(D)(ii). The central argument of section C is that Mr. Morson's expert opinion is flawed because it is based on an incorrect assumption. Section C further offers reasons why Mr. Morson's statements are inaccurate, and offers explanations of the inaccuracies. Mr. Traubert states that, "[b]ecause Mr. Morson offered no detail to support his opinion, [Mr. Traubert] performed an analysis to evaluate the effectiveness of the screen inside the throttle valve with regard to even distribution of the steam flow", and that he had no reason to conduct further analysis until Mr. Morson presented his even distribution theory. [Doc. # 130-1, Traubert Aff., at ¶¶ 9, 12]. Although section C does offer new analysis and calculations, the Court finds that such were undertaken in an effort to rebut and/or contradict the theory posited by Mr. Morson, and are therefore proper. <u>Allen v. Dairy Farmers of America, Inc.</u>, No. 5:09-cv-230, 2013 WL 211303, at *4 (D. Vt.

Jan. 18, 2013) (citation and internal quotations omitted) ("It is also acceptable for an expert to use new methodologies in a rebuttal for the purpose of rebutting or critiquing the opinions of Defendants' (sic) expert witness."). As the Eastern District of New York noted, this type of testimony "is archetypal rebuttal testimony: it identifies a flawed premise in an expert report that casts doubt on both that report's conclusions and its author's expertise." Scientific Components Corp. v. Sirenza Microdevices, Inc., No. 03 CV 1851(NGG)(RML), 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)(citing Cf. TC Sys. Inc. v. Town of Colonie, 213 F.Supp.2d 171, 180 (N.D.N.Y. 2002) (interpreting "same subject matter" in Rule 26(a)(2)(C)(ii) as allowing rebuttal experts to use a different methodology to analyze the same facts considered by the expert in chief.")).

Defendant also argues that Mr. Traubert's rebuttal report relies on a new set of proposed transport velocities created by Dr. Kahn. However, a review of the face of Mr. Traubert's report, and Dr. Kahn's calculation, indicates that these calculations were made in direct response to the calculations performed by defendant's expert, Mr. Tuppeny. Indeed, the "new" calculations use the same equations as used by Mr. Tuppeny. Accordingly, the Court finds that this is proper rebuttal material. To the extent defendant argues that the Traubert report and Kahn calculations only serve to bolster plaintiffs'

case-in-chief, such concerns are typically left for exposure on cross-examination, not addressed by excluding the report. Allen, 2013 WL 211303, at *6.

    ii.   Prejudice

Defendant next argues that it will suffer severe prejudice if the Court does not strike section C of Mr. Traubert's rebuttal report. The Court agrees that allowing the opinions contained in section C causes prejudice to defendant. However, plaintiffs have an opportunity to cure the prejudice by conducting continued depositions of Mr. Traubert and Dr. Kahn. See Equant Integration Serv., Inc. v. United Rentals, Inc., 217 F.R.D. 113, 118 (D. Conn. 2003)(finding plaintiff could cure prejudice by producing expert for additional deposition). Moreover, it is clear the parties contemplate having to take continued depositions of both Mr. Traubert and Dr. Kahn in light of their joint request for the entry of a modified scheduling order. [Doc. # 142, at ¶¶ 4-6]. The prejudice is further mitigated by this Court's prior order which required plaintiffs to bear the cost of these additional depositions. The Court declines defendant's request for costs incurred to examine and address Mr. Traubert's rebuttal report. The Court also will not award fees for the expense of preparing the motion to strike.

**C. Dr. Cammett's Rebuttal Report**

   *i.   Scope of Rebuttal*

To determine whether the contested paragraph of Dr. Cammett's report is proper rebuttal, the Court must first address Dr. French's expert report, which Dr. Cammett presumes to rebut.[5] On June 24, 2013, defendant's expert, Dr. French, produced his expert report.  Dr. French was asked to determine whether the foreign materials removed from the Turbine and other components along the steam path contained shot or grit and, if so, whether the material matches shot from defendant's fabricator, or shot/grit from BendTec, or neither. In addressing this issue, Dr. French looked at the chemical composition of the foreign material and its general appearance.  Specifically, Dr. French examined six (6) samples, including samples taken from the Turbine, and samples provided to him by defendant and BendTec.  Dr. French also visited Dr. Jur's lab and examined two samples removed from the left and right sides of the throttle valve.  After performing a chemical analysis on the samples, Dr. French concluded that,

> [A]n element-by-element comparison shows the measured amounts of aluminum, chromium, copper, manganese, molybdenum, nickel and silicon in the [defendant] shot sample differ from those elements in all five other samples.  The inescapable conclusion is particles found in the piping, turbine and other components

---

[5] Dr. Cammett's report is titled "Rebuttal to David N. French Report, dated June 24, 2013". Plaintiffs contend that Dr. Cammett's report also rebuts Mr. Morson and Mr. Tuppeny's suggestions that the material found in the Turbine was grit based on its appearance.

11

>   along the steam path are inconsistent with the samples
>   provided by [defendant][…].  From my chemical
>   analysis, those spherical particles segregated from
>   the larger grit and debris samples found in Unit #2
>   [the Turbine] are not a match with [defendant]
>   supplied shot.

[Doc. # 127-2, Ex. B, Report of David N. French]. Dr. French also concludes that the samples removed from the Turbine more closely match the sample of grit provided by BendTec.

Plaintiffs argue that the contested portion of Dr. Cammett's report also rebuts the opinions in Mr. Tuppeny and Mr. Morson's reports that the foreign material found in the Turbine was grit based on its appearance.  The applicable portion of Mr. Tuppeny's report states that, "because the material found and having caused the damage [to the Turbine] was steel grit and IMC never purchased steel grit and only possessed steel shot as evidenced above, it is my opinion that implicating B&W and IMC for having used steel grit seems preposterous." [Doc. # 130-7, Ex. 4, Report of William H. Tuppeny, Jr.].  Mr. Morson similarly states, in pertinent part, that "[t]he chemical composition, hardness, particle shape and particle shape requirements are all consistent with the category of metal grit." [Doc. # 130-5, Ex. 2, Report of Alexander Morson].

Dr. Cammett's rebuttal report contains two (2) pages of discussion.  Attached to the report is an appendix detailing his education and experience, and a second appendix attaching

12

materials he reviewed in formulating his opinion. The Cammett report contains a summary of Dr. French's report, and opines that because Dr. French's methodology is flawed, his conclusions cannot be made within a reasonable degree of scientific certainty.  The bulk of Dr. Cammett's report directly rebuts Dr. French's methodology and conclusions. The sole paragraph of Dr. Cammett's rebuttal which defendant seeks to exclude states the allegedly new theory that "shot has a tendency to fracture upon impact", and therefore, "it is impossible to conclude that the foreign material found in the turbine was originally grit."

After careful review of the expert reports, the Court finds that paragraph 3 on page 3 of Dr. Cammett's report is not proper rebuttal under Rule 26(a)(2)(D)(ii), as it appears to introduce a new theory into the case, namely that shot may fracture into grit.  This theory does not rebut statements made in any of defendant's experts' reports, as none opine on the structural nature of the foreign material, or whether its structure may be changed.  Moreover, although defendant relies in part on the shape of the foreign material to support its theory that it was grit, shape alone is not the determinative factor for the defendant's experts' conclusions. For example, although Dr. French did consider the shape of the foreign materials in his report, it is amply clear his opinions rest primarily on chemical analysis, and not the shape of the samples.   As such,

paragraph 3, page 3, of Dr. Cammett's report is not proper rebuttal, and should have been disclosed at the time of the initial expert disclosures. The Court must now determine whether to strike this portion Dr. Cammett's opinion as an appropriate sanction.

  *ii. Exclusion of Cammett Report*

Courts in the Second Circuit are directed to consider the following factors in determining whether to exclude expert testimony: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." Sofitel Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)). "None of these factors are dispositive and each factor is to be balanced against the others in making the determination." Lab Crafters, Inc. v. Flow Safe, Inc., No. CV-03-4025 (SJF)(ETB), 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007) (citing Sofitel, 118 F.3d at 962).

Plaintiffs present no explanation for their failure to comply with Judge Hall's discovery order, presumably because plaintiffs' position is that Dr. Cammett's report was filed in a timely manner as a rebuttal report. "Exclusion of expert

14

testimony should be reserved for those rare cases where a party's conduct represents flagrant bad faith and callous disregard for the Federal Rules of Civil Procedure." Lab Crafters, 2007 WL 7034303, at *7.  Here, it is not apparent that plaintiffs acted in bad faith in submitting Dr. Cammett's report.  The bulk of Dr. Cammett's report is a direct rebuttal to the opinions of Dr. French, and not challenged by defendant.  It appears to the Court that Dr. Cammett's new theory was not raised in bad faith, but rather as part of an attempt to provide helpful background information.  Therefore, in the absence of bad faith, the Court finds this factor to weigh in favor of plaintiffs and the admission of Dr. Cammett's opinion.

With respect to the second Sofitel factor, the information defendant seeks to strike is central to the issue of whether the foreign material found in the Turbine is shot or grit, which requires expert testimony.  Accordingly, the importance of Dr. Cammett's opinion weighs in favor of its admission.  See Scientific Components Corp., 2008 WL 4911440, at *4 (denying motion to strike where the rebuttal report was "important to plaintiff's case"); Lab Crafters, 2007 WL 7034303, at *7 (admission of rebuttal expert testimony warranted where it was of "grave importance to defendant's case.").

The third factor to consider is the prejudice suffered by defendant "as a result of having to prepare and meet new

15

testimony." Sofitel, 118 F.3d at 962. Defendant asserts that allowing the disputed portions of Dr. Cammett's rebuttal will prejudice it by requiring it to address new theories and, in turn, engage in new discovery, at a late date. The Court agrees that allowing the disputed portion of Dr. Cammett's rebuttal opinion causes prejudice to defendant. However, courts in the Second Circuit addressing this issue "have stated that any prejudice to the opposing party can be alleviated by allowing them to depose the expert prior to trial." Lab Crafters, 2007 WL 7034303, at *8; see also Allen, 2013 WL 211303, at *4 (citing multiple cases)("[P]rejudice from the introduction of a rebuttal report is commonly addressed by allowing the other party an opportunity to depose the expert."). The Court agrees that any prejudice may be cured by defendant taking Dr. Cammett's deposition, which the parties have anticipated in their joint request for the entry of a modified scheduling order. [Doc. #142, at ¶ 6]. The Court will not, however, require plaintiffs to bear the costs of Dr. Cammett's deposition, or defendant's costs to address and examine Dr. Cammett's report, where defendant has only challenged one paragraph of the report.  The Court also declines to award fees for preparing the motion to strike.

Finally, the Court considers the possibility of continuance.  In this case, no trial date has been set.  On

October 21, 2013, Judge Hall granted in part and denied in part the parties' joint motion for entry of modified scheduling order, which extended the deadlines for the parties to complete the depositions of plaintiffs' experts, file their dispositive and <u>Daubert</u> motions, and to file their joint trial memorandum. [Doc. # 148]. The Court is cognizant that the parties' request for the extension was premised, in part, on the anticipated deposition of Dr. Cammett. Although the extended deadlines may adversely affect the progression of the case, the Court finds that any such delay does not prejudice the parties where they jointly requested the extension of the Court's deadlines, and have delayed taking other expert depositions in anticipation of this ruling. Accordingly, this factor also weighs in favor of allowing the entirety of Dr. Cammett's opinion. Based on the foregoing, the Court declines to strike page 3, paragraph 3, of Dr. Cammett's report. <u>See</u> <u>Scientific Components</u>, 2008 WL 4911440, at *4 (multiple citations omitted)("[P]recluding testimony of an expert, even where there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.").

The Court notes that nothing in this ruling should be construed as an opinion on the admissibility of the expert reports or testimony. If defendant deems it necessary to serve

sur-rebuttal reports in light of this ruling, defendant shall make a separate application to the Court seeking permission to do so.

### III. Conclusion

For the reasons set forth herein, the defendant's motion to strike [Doc. # 127] is DENIED. This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport, this 24th day of October 2013.

```
        _____/s/_____
        HOLLY B. FITZSIMMONS
        UNITED STATES MAGISTRATE JUDGE
```